**Opinion issued March 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00206-CV

————————————

**LOUIS MCAFEE, Appellant**

**V.**

**WILLIAM E. ADAMCIK, Appellee**

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Case No. 2010V-0046**

---

## MEMORANDUM OPINION

Louis McAfee appeals the judgment following a jury trial rendered in favor of William E. Adamcik in Adamcik's suit for trespass to real property. In his sole point of error, McAfee contends that there is legally insufficient evidence to

support the jury's implicit finding that Adamcik's convenience fence was destroyed by McAfee's bulldozing activities. We affirm the trial court's judgment.

## Background

In January 2008, Adamcik leased five hundred acres of land on the banks of the Brazos River for grazing cattle ("the Sprain Ranch"). The ranch was separated from McAfee's neighboring property by a boundary fence. The section of the fence line that extended down to the river was held up by brush, trees, and T-posts. This type of fence is often called a "convenience fence" because the barbed wire is tied to anything sturdy and "convenient." Although the convenience fence separated the two properties, the fence was located well inside the Sprain Ranch property line. Adamcik and a friend inspected the ranch's fence line, including the convenience fence, prior to leasing the property in December 2007 and found the fence to be intact and suitable to contain his herd.

McAfee rented a bulldozer in late May 2008 and hired two men to clear the underbrush on approximately seven acres of his property, including the area adjacent to the Sprain Ranch where Adamcik's convenience fence was located. McAfee mistakenly believed that the fence line demarcated the boundary between his property and the Sprain Ranch and instructed his workers to bulldoze all of the underbrush on his side of the fence posts. As a result, in addition to clearing

McAfee's land, the workers also bulldozed a portion of the Sprain Ranch approximately 50' wide and 63' deep.[1]

The Sprain Ranch lease was divided by three cross fences into four separate pastures or paddocks and Adamcik routinely rotated his cattle between the pastures to conserve the land. On July 15, 2008, Adamcik released his cattle into the pasture next to McAfee's property, just as he had done three or four months before without incident. Two days later Adamcik received a telephone call from one of his neighbors informing him that some of his cattle had escaped.

After collecting most of his wayward cattle, Adamcik inspected his fence line and discovered that his convenience fence by the river was missing. With the help of Chris Toman, Adamcik erected a temporary fence where the convenience fence had previously stood. Although Adamcik had managed to find most of his missing herd, five of his heifers had gotten mired in the muddy river bank and died.

At trial, Adamcik testified that he examined his fence line after his cattle escaped and discovered that the convenience fence was missing and that the area where the fence had been located had been cleared by a bulldozer. Adamcik observed hoof prints in the area and believed that this was the area where the cows

---

[1]     McAfee acknowledges that he was mistaken about the location of the property line and concedes that he trespassed on the Sprain Ranch when he instructed Loper and Shaw to bulldoze all of the underbrush on McAfee's side of the fence.

had escaped. This was the only time the cattle escaped from the Sprain Ranch during Adamcik's three-year lease of the property. According to Adamcik, there was no underbrush or trees left standing in the area, only bulldozer tracks, large uprooted trees, and remnants of his old convenience fence. Adamcik and Toman had to construct the temporary fence using T-posts because the large trees that supported most of the original fence were gone. Given the steep and unsteady terrain and bulldozer tracks in the area, Adamcik believed that the convenience fence had been torn down by a bulldozer. Adamcik testified that he had not given anyone permission to bulldoze the area.

Chris Toman testified that he helped Adamcik erect a temporary fence after Adamcik's cattle escaped. In addition to the cattle tracks he observed, Toman also noticed bulldozer tracks, bent T-posts buried deep in the ground that were scarred with track marks from a bulldozer, and a "pile of brush where the fence was pushed and cleared away." When asked if it were possible for the river to have caused the damage, Toman testified that it was not possible for the river to have inflicted the damage he witnessed. Although he acknowledged that he had not seen the convenience fence prior to May 2008, Toman testified that he knew it had been there because the old fence "was on the pile in the brush right beside where we built the new fence." Based on his observations, Toman believed that Adamcik's fence had been knocked down by a bulldozer.

McAfee testified that although there had been a complete fence to the river five or six years before, there was no longer a barbed wire fence in the thick brush separating his property from the Sprain Ranch. He could see the remnants of an old fence, including at least three T-posts, but no barbed wire. McAfee believed that the river had come up and washed the fence away. He was not sure when the river had done this, but was certain that the fence "wasn't there at the end of May when [he] went down there to look at it." McAfee painted three T-posts orange to mark what he believed to be the property line, and later pointed those T-posts out to his workers and instructed them to not go beyond those posts when they bulldozed the area.

McAfee's daughter testified that she saw the remnants of an old fence in May 2008, but no barbed wire. She also testified that it appeared as though the river had flooded and taken the barbed wire and bent a couple of T-posts as well. McAfee's employees also offered similar testimony. In particular, McAfee's ranch hand, Joe Speckmeirer, testified that he was familiar with the property and that, to the best of his knowledge, there was no fence between McAfee's wooden fence and the river in May 2008. He also testified that there had never been a fence there since he began working for McAfee in 1993 or 1994 and he did not recall seeing any T-posts in the area prior to June 2008. The two men who bulldozed the area in May 2008 testified that they did not see a fence in the area down by the river.

Other witnesses familiar with the Sprain Ranch testified that ranchers had been grazing cattle on the property for over thirty years before Adamcik leased the property and they had not had a problem with cattle escaping in the area by the river where Adamcik's convenience fence stood. They also testified that although the brush was so dense that it normally protected the fence from the occasional rise of the Brazos River, there had been times in the past when the river had risen up and damaged the convenience fence, and the fence had to be repaired in order to prevent cattle from escaping.

After a three-day trial, the jury found that McAfee, either individually or jointly, trespassed upon Adamcik's property and awarded Adamcik $8,000 in damages for the convenience fence and the five dead cattle. The jury also awarded Adamcik $72,000 in attorney's fees for trial; $10,000 in fees for an appeal to the court of appeals; and $5,000 in fees for an appeal to the Supreme Court of Texas. The court entered judgment in accordance with the jury's award. This appeal followed.

## Legal Sufficiency

In his sole point of error, McAfee contends that there is legally insufficient evidence to support the jury's implied finding that Adamcik's convenience fence was standing when McAfee bulldozed the land.

6

When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We will sustain a no-evidence point only if (1) the record reveals a complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller*, 168 S.W.3d at 816. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). Although direct evidence is not required, circumstantial evidence must still consist of more than a scintilla to withstand a no-evidence challenge. *See Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995); *see generally Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993) (stating that any ultimate fact may be proved by circumstantial evidence for purposes of legal sufficiency review). Evidence does not exceed a scintilla if jurors "would have to guess whether a vital fact exists." *City of Keller*,

7

168 S.W.3d at 813. The "final test" for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. We will not substitute our judgment for that of the jury and we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 819–20, 827. Although they are the sole judge of the evidence's credibility and weight, "[[j]urors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.* at 819–20.

Whether the convenience fence was standing when the property was bulldozed in May 2008 was a hotly contested issue at trial. Although McAfee and his witnesses testified that there was no convenience fence when they bulldozed the area, Adamcik and Toman testified to the contrary. Adamcik testified that the fence was in place in December 2007. Although he did not inspect the fence line at the time, the jury could infer that the fence was in place in March or April 2008 because the cattle were in the pasture and none escaped. Furthermore, Toman testified that he noticed bulldozer tracks, bent T-posts buried deeply in the ground

8

that were scarred with indentations from a bulldozer, and a "pile of brush where the fence was pushed and cleared away," and that, based on his observations, he concluded that a bulldozer, not the river, had destroyed Adamcik's convenience fence. Toman also testified that he knew that the fence had been there when the area was cleared by the bulldozer because the old fence "was on the pile in the brush right beside where we built the new fence." Thus, contrary to McAfee's contention, there is circumstantial evidence from which a jury could reasonably infer that Adamcik's convenience fence was standing when McAfee bulldozed the area in May 2008.

McAfee argues that this evidence is not sufficient to carry Adamcik's burden of proof because McAfee's position that the fence had been washed away by the river beforehand was equally supported by the same evidence. *See City of Keller*, 168 S.W.3d at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."). We disagree. Although there is testimony establishing that it is possible for the Brazos River to flood and cause damage to the convenience fence, and that such events have occurred in the past, there is no evidence in the record that the river actually flooded or otherwise rose to such an extent at any time between December 2007 and July 17, 2008. Without such evidence, a jury could not have reasonably inferred that Adamcik's convenience fence was destroyed by the Brazos River prior to McAfee's bulldozing of the area.

9

Although there is no evidence of any river flooding during the relevant time period there is, however, undisputed evidence that McAfee bulldozed the underbrush in the area in May 2008 and testimony that the damage to the fence's remnants was consistent with the fence having been destroyed by a bulldozer. As such, the evidence in this case is not equally consistent with McAfee's and Adamcik's competing explanations for the fence's destruction. Furthermore, as the sole judge of the weight and credibility of the evidence, it was the jury's province to evaluate the credibility of the witnesses and their testimony to draw reasonable inferences from that testimony. *See City of Keller,* 168 S.W.3d at 819–20. We will not substitute our judgment for the jury's. *Id.*

Applying the proper standard of review, we conclude that there is more than a scintilla of evidence supporting the jury's implied finding that Adamcik's convenience fence was standing when McAfee bulldozed the land and hold that the evidence was legally sufficient to support the finding. *See City of Keller*, 168 S.W.3d at 827 (stating that "final test" for legal sufficiency is whether evidence would "enable reasonable and fair-minded people to reach the verdict under review").

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.